UNITED STATES of America, Plaintiff-Appellee,

v.

Edward STULGA, Defendant-Appellant.

No. 75–2070.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 16, 1976.

Decided April 6, 1976.

Thomas A. Livingston, Pittsburgh, Pa. (Court appointed—CJA), for defendant-appellant.

Thomas F. Turley, U. S. Atty., W. Hickman Ewing, Jr., Memphis, Tenn., for plaintiff-appellee.

Before PHILLIPS, Chief Circuit Judge, and CELEBREZZE and MILLER, Circuit Judges.

CELEBREZZE, Circuit Judge.

Appellant was convicted in the District Court for the Western District of Tennessee, on Count eight of a nine-count indictment, of conspiring to forge endorsements on and cash stolen United States Savings Bonds. The indictment was inartfully drawn, charging conspiracy under 18 U.S.C. § 371 and the substantive violation of 18 U.S.C. §§ 471–473, when 18 U.S.C. § 495 was the appropriate provision for the substantive charge. Appellant challenged the indictment but the district judge allowed it to stand.

Appellant renews his challenge of the indictment. Our decision in *United States v. Garner, et al.*, 529 F.2d 962, Nos. 75–1270–1272 (6th Cir. Feb. 12, 1976), arising out of the same factual situation as the instant action, is dispositive of this question.

The indictment avers that in January of 1973, five individuals burglarized the residence of Albert and Rebecca Pierce, in Paris, Tennessee, taking U. S. savings bonds with a total face value of $25,200. In March of 1973, the stolen bonds were transferred to Dennis Dwayne Garner in Huron, Tennessee. In April of 1973, Garner transported the bonds to Augusta, Georgia, and transferred them to William A. Spaniard and Leo P. Byrnes. Garner, Spaniard, and Byrnes agreed that the latter two would forge endorsements on the bonds, cash the bonds, and divide the proceeds into three equal shares. Garner and Spaniard testified at Appellant's trial and admitted their part in the scheme. Their testimony concerning Appellant was almost totally exculpatory. Appellant was charged with serving as an intermediary between Garner and Spaniard and Byrnes and therefore being a participant in an unlawful conspiracy as well as committing substantive violations. On March 13, 1975, following a jury trial, Appellant was convicted on the conspiracy count of the indictment and sentenced to three years of incarceration.

Although Appellant raises five issues in urging that his conviction be reversed, we need reach only one of those issues. Appellant contends that the District Court's failure to instruct the jury that it could either convict or acquit on the basis of accomplice testimony was reversible error, citing *Cool v. United States*, 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972).

The factual setting and the posture of the trial, reviewed by the Supreme Court in

*Cool, supra,* are similar to the factual setting and trial posture of this case. In *Cool,* the petitioner and her husband were arrested in Brazil, Indiana, after Robert E. Voyles entered a car in which they were waiting. Voyles had just passed two counterfeit obligations of the United States in a nearby store. Petitioner, her husband and Voyles had traveled to Brazil from St. Louis, Missouri. There was testimony at trial that petitioner threw a bag, later found to contain counterfeit currency, from the car shortly after being apprehended. Police officers testified that three counterfeit bills were found under the front seat of the car. At trial, Voyles admitted his guilt but staunchly contended that petitioner and her husband had nothing to do with the crime. Although petitioner testified in her own defense, her defense was based primarily on the testimony of Voyles. In *Cool,* the district judge, in his charge to the jury, after defining "accomplice" and warning that an accomplice's testimony is "open to suspicion," stated:

> "However, I charge you that the testimony of an accomplice is competent evidence and it is for you to pass upon the credibility thereof. If the testimony carries conviction and you are convinced it is true *beyond a reasonable doubt,* the jury should give it the same effect as you would to a witness not in any respect implicated in the alleged crime and you are not only justified, but it is your duty, not to throw this testimony out because it comes from a tainted source." (Emphasis added by the Supreme Court.)[1]

The Supreme Court, in reviewing this charge, stated:

> The clear implication of this instruction was that the jury should disregard Voyles' testimony unless it was "convinced it is true beyond a reasonable doubt." (Footnote deleted.) Such an instruction places an improper burden on the defense and allows the jury to convict

despite its failure to find guilt beyond a reasonable doubt. (Footnote deleted.)[2]

In a footnote, the Supreme Court commented on an additional portion of the district judge's charge:

> In the next paragraph of his instruction, the judge stated: "I further instruct you that testimony of an accomplice may alone and uncorroborated support your verdict of guilty of the charges in the Indictment if believed by you to prove beyond a reasonable doubt the essential elements of the charges in the Indictment against the defendants." In light of the fact that the only accomplice testimony in the case was exculpatory, this instruction was confusing to say the least. But even if it is assumed that Voyles' testimony was to some extent inculpatory, the instruction was still fundamentally unfair in that it told the jury that it could convict solely on the basis of accomplice testimony without telling it that it could acquit on this basis. Even had there been no other error, the conviction would have to be reversed on the basis of this instruction alone.[3]

The above quoted discussion in *Cool* is dispositive of the instant action.

Appellant did not take the stand and he presented no evidence in his own defense. The Government presented more than twenty witnesses. A number of these witnesses, including the two major witnesses, Dennis Dwayne Garner and William A. Spaniard, were accomplices in the bond-cashing scheme. Both Garner and Spaniard admitted their participation in the illegal scheme and both testified that Appellant was not involved in some parts of the scheme and that they could not remember whether he participated in other facets of the scheme. In view of the fact that Appellant presented no evidence in his defense, the jury's evaluation of the testimony of Garner and Spaniard was pivotal to

---

**1.** 409 U.S. at 102, 93 S.Ct. at 356, 34 L.Ed.2d at 338.

**2.** 409 U.S. at 102–103, 93 S.Ct. at 356, 34 L.Ed.2d at 338.

**3.** 409 U.S. at 103 n.4, 93 S.Ct. at 356, 34 L.Ed.2d at 338.

Appellant's defense. In his charge to the jury, the district judge first reviewed the posture of the case and then thoroughly discussed the law of conspiracy. The district judge charged that the defendant is presumed innocent and that the government has the burden of overcoming this presumption with competent evidence. The district judge noted that to convict, the jury must believe the government has proven beyond a reasonable doubt that the defendant is guilty. Later in the charge, the district judge discussed accomplice testimony as follows:

> There has been testimony in this trial from witnesses whom you may find to have been accomplices. An accomplice is one who unites with another in the commission of a crime, voluntarily and with common intent. An accomplice does not become incompetent as a witness because of participating in the criminal act charged. On the contrary, the testimony of an accomplice alone, if believed by you, may be of sufficient weight to sustain a verdict of guilty, even though not corroborated or supported by other evidence. However, the jury should keep in mind that such testimony is to be received with caution and weighed with great care. You should not convict a defendant upon the unsupported testimony of an accomplice, *unless you believe the unsupported testimony beyond all reasonable doubt.* (Emphasis added.) [4]

The district judge then discussed the methods of discrediting a witness and concluded the charge with general remarks about the duty of jurors. Following the charge, Appellant's counsel took exception to the charge.

The following exchange ensued:

THE COURT: (Interposing) Do you want me to withdraw the accomplice charge?

MR. LIVINGSTON: No. I want you to charge that exculpatory testimony of an accomplice need not be proven beyond a reasonable doubt, need not be proven by a fair preponderance of the evidence in order to raise the doubt on the defendant's behalf.

THE COURT: Well, I am not going to charge them that.

MR. LIVINGSTON: Okay. That is all.[5]

We find that the accomplice portion of the charge could be confusing to the jury as to burden of proof, despite the judge's remarks about the government's burden earlier in the charge.

The district judge was in error in failing to instruct the jury on evaluating the exculpatory testimony offered by the government's two main witnesses. The judge instructed the jury on evaluating an accomplice's inculpatory testimony despite the virtual dearth of inculpatory testimony from witnesses who could be considered accomplices, but neglected to instruct the jury as to the appropriate manner in which to evaluate the wealth of exculpatory testimony furnished by accomplices. This lack of precision in the charge could very well have confused the jurors, they might have erroneously concluded that they had to believe the accomplice's exculpatory testimony beyond a reasonable doubt before it could support a defense for Appellant. As the Supreme Court noted in *Cool*, the imposition of such a burden could allow "the jury to convict despite its failure to find guilt beyond a reasonable doubt." [6]

We conclude for the foregoing reasons that an improper burden was placed on Appellant.

The cause is remanded for proceedings consistent with this opinion.

---

**4.** Joint Appendix at 494a–495a.

**5.** Joint Appendix at 501a–502a.

**6.** 409 U.S. at 103, 93 S.Ct. at 356, 34 L.Ed.2d at 338.