35 F.3d 566
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Anders MIGDALECK, Defendant-Appellant,
v.
UNITED STATES of America, Plaintiff-Appellee.
 No. 93-2604.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1994.
 
 Before: MARTIN, NELSON, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Claiming that the district court improperly defined "reasonable doubt" in its instructions to the jury with respect to accomplice testimony, Anders Migdaleck filed a motion to vacate sentence under 28 U.S.C. Sec. 2255 and requested a new trial. The district court denied the motion, and Migdaleck now appeals. We affirm.
 
 
 2
 On January 6, 1988, a federal grand jury returned a twenty-three count indictment charging Migdaleck and eight other individuals with mail fraud and interstate transportation of securities taken by fraud, in violation of 18 U.S.C. Secs. 1341 and 2134. Specifically, the indictment contained allegations that Migdaleck and the other defendants engaged in a scheme to defraud insurance companies by intentionally setting fire to residences located in the Detroit metropolitan area. After each fire, a claim was filed by mail with the homeowner's insurance carrier. Migdaleck, a licensed contractor and owner of two construction companies, purportedly organized the arson scheme and paid the other participants in the scheme out of the insurance proceeds.
 
 
 3
 At trial, arsonists Willie Weems, Adar Hassan, and Al Meredith, Jr., gave testimony favorable to Migdaleck, stating that the residence fires were represented to Migdaleck as legitimate losses, and implying that Al Meredith, Sr., operated the arson scheme. Al Meredith, Sr., however, testified that Migdaleck was his accomplice in the scheme, paid commissions to the arsonists, and provided the funds used to purchase incendiary materials. Pursuant to the request of one of Migdaleck's codefendants, the district court instructed the jury with respect to accomplice testimony as follows:
 
 
 4
 The testimony of one who asserts by his testimony that he is an accomplice may be received in evidence and considered by the jury even though not corroborated by other evidence and given such weight as the jury feels it should have. You should always keep in mind, however, that such testimony is always to be viewed with caution and considered with great care. You should never convict a Defendant upon the unsupported testimony of an alleged accomplice unless you believe that testimony beyond a reasonable doubt.
 
 
 5
 (emphasis added) Migdaleck's trial counsel objected to this instruction, which was based on Devitt and Blackmar, Federal Jury Practice and Instructions, 3d ed., Sec. 17.06 (1977), and requested a substitute instruction:
 
 
 6
 [I]f you believe the evidence of the accomplice, and you feel that in and of itself is sufficient to satisfy you that it is proof of guilt beyond a reasonable doubt, then you may accept it.
 
 
 7
 The district court denied this request, and the jury subsequently convicted Migdaleck on ten counts of mail fraud. The district court sentenced him to twenty years in prison and ordered him to pay over $170,000 in fines and restitution.
 
 
 8
 Migdaleck appealed his convictions to this Court, claiming that the district court erred by failing to give an instruction regarding exculpatory accomplice testimony. For this proposition, Migdaleck relied on Cool v. United States, 409 U.S. 100 (1972), and United States v. Stulga, 531 F.2d 1377 (6th Cir.1976). In Cool, a single accomplice testified and offered exculpatory testimony for the defense. Over defense counsel's objection, the district court instructed the jury to consider the accomplice testimony if it found that testimony to be true beyond a reasonable doubt. The Supreme Court reversed, finding that this instruction unconstitutionally decreased the government's burden of proof. Cool, 409 U.S. at 102-04. In dicta, the Supreme Court stated in a footnote that it also would have reversed the conviction on the alternate ground that it is confusing and unfair to instruct jurors that they may convict on the basis of accomplice testimony without informing them that they may also acquit on that basis. Id. at 103 n. 4.
 
 
 9
 In Stulga, two of the several accomplices that testified for the government partially exculpated the defendant. Defense counsel objected to the district court's jury instruction on accomplice testimony, and specifically requested an instruction stating that exculpatory accomplice testimony did not have to be believed beyond a reasonable doubt, or by a preponderance of the evidence. This Court held, on appeal, that the district court's failure to give this instruction was reversible error in light of the abundant exculpatory testimony offered, and the "virtual dearth" of inculpatory testimony. Stulga, 531 F.2d at 1380.
 
 
 10
 In assessing Migdaleck's claims on direct appeal, this Court observed that the objection and instruction originally requested at trial by Migdaleck's counsel did not concern the proper evaluation of exculpatory accomplice testimony, unlike the situation in Cool and Stulga. Accordingly, this Court reviewed the district court's jury instructions for plain error pursuant to Federal Rule of Criminal Procedure 52(b), and found no such error resulting in a "miscarriage of justice." United States v. Perkins, Nos. 88-1953 to 88-1956, 88-2031, 88-2110, 1990 WL 20835, at * 3 (6th Cir. Mar. 7, 1990) (citing United States v. Hook, 781 F.2d 1166, 1172 (6th Cir.) (if no specific objection registered at trial, reversal warranted only where a miscarriage of justice would result), cert. denied, 479 U.S. 882 (1986)).
 
 
 11
 In 1993, the Supreme Court decided Sullivan v. Louisiana, 113 S.Ct. 2078 (1993). In Sullivan, the Supreme Court held that a constitutionally deficient definition of reasonable doubt in a criminal case jury instruction is not amenable to harmless error analysis, and that such a deficient definition would always invalidate a conviction. The jury instruction in Sullivan was essentially similar to the one found unconstitutional in Cage v. Louisiana, 498 U.S. 39 (1990). The Cage jury instruction defined reasonable doubt in terms of a "grave" uncertainty, a "substantial" doubt, and "moral certainty."
 
 
 12
 Following the decision in Sullivan, Migdaleck filed a motion to vacate sentence under 28 U.S.C. Sec. 2255 and requested a new trial, claiming that the district court's failure to instruct the jury on exculpatory accomplice testimony resulted in a deficient definition of reasonable doubt. According to Migdaleck, the combined holdings of Cool, Stulga, and Sullivan mandated this conclusion. The district court denied the motion, stating that the jury instruction it gave neither lessened the government's burden of proof nor set forth an incorrect definition of reasonable doubt, and that Sullivan therefore did not apply. See Sullivan, 113 S.Ct. at 2082 ("the essential connection to a "beyond a reasonable doubt" finding cannot be made where the instructional error consists of a misdescription of the burden of proof, which vitiates all the jury's findings") (emphasis added). The district court further held that, under the same plain error analysis previously engaged in by this Court, Migdaleck was not entitled to relief. This timely appeal followed.
 
 
 13
 Here, Migdaleck reiterates his contention that the district court's jury instruction improperly defined reasonable doubt under Cool and Stulga, and that Sullivan requires that he be retried as a result. The key part of the instruction in question reads as follows: "You should never convict a Defendant upon the unsupported testimony of an alleged accomplice unless you believe that testimony beyond a reasonable doubt." Based on the jury instructions as a whole, and this portion of them in particular, we conclude that the district court correctly described the government's burden of proof, and that Sullivan, which involved a further qualitative, "grave uncertainty"/"substantial doubt" definition of reasonable doubt, is thus inapplicable to the facts of this case. Accordingly, this Court's previous plain error analysis remains valid, and we do not reach the question of whether Sullivan has retroactive effect.
 
 
 14
 For the foregoing reasons, the judgment of the district court is affirmed.